**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE NO. 1:24-CV-186**

| | | |
|---|---|---|
| MASON VAUGHAN, *individually and on behalf of himself and all others similarly situated*, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| DELTA DELTA DELTA FRATERNITY, DELTA DELTA DELTA FOUNDATION, DELTA DELTA DELTA PARK STREET PROPERTIES, LLC, and DELTA DELTA DELTA NATIONAL HOUSE CORPORATION, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Mason Vaughan ("Plaintiff"), individually and on behalf of all others similarly situated (the "Settlement Class"), has reached a settlement with Defendants Delta Delta Delta Fraternity, Delta Delta Delta Foundation, Delta Delta Delta Park Street Properties LLC, and Delta Delta Delta National House Corporation (collectively, "Defendants"). Accordingly, Plaintiff has moved for: (1) Preliminary Approval of the Proposed Class Action Settlement; (2) certification of the Settlement Class for purposes of the Proposed Settlement; (3) appointment of Maginnis Howard as Class Counsel; (4) Notice to be sent to the Settlement Class; and (5) the scheduling of a Final Settlement Approval Hearing.

## I.    INTRODUCTION.

This Class Action arises out of a breach in Defendants' cybersecurity (the "Data Breach"), through which the sensitive and valuable personally identifiable information ("PII") of Defendants' former and current employees, including Plaintiff and the Settlement Class, stored by Defendants was accessed and disclosed. [*See generally* DE 1]. In his Class Action Complaint (the

"Complaint"), Plaintiff alleges that the Data Breach and the subsequent disclosure of the PII of Plaintiff and the Settlement Class was the result of Defendants' inadequate cybersecurity measures and breach of its duties and obligations; asserts associated claims for negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, and unjust enrichment. [*Id*.]. While Defendants deny all allegations and liability, after extensive and productive negotiations, the Parties have determined to settle this Action and thus avoid the compounding expense, risk, and uncertainty of continued litigation. Accordingly, the Parties have properly executed a Settlement Agreement. (*See generally* Settlement Agreement, attached as <u>Exhibit A</u>).

The Proposed Settlement reached by the parties should be preliminarily approved because its terms are fair, adequate, and reasonable; the Settlement Class meets the requirements for certification for purposes of settlement; and the Proposed Notice Plan provides the best practicable notice under the circumstances and comports with Rule 23 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P 23(c)(2). Moreover, the Proposed Settlement provides meaningful and substantial benefits to the members of the Settlement Class.

Accordingly, Plaintiff respectfully requests that this Court grant his Motion for Preliminary Approval, and specifically: (1) grant Preliminary Approval of the Proposed Settlement; (2) certify the Settlement Class for purposes of the Proposed Settlement; (3) appoint Plaintiff as Settlement Class Representative and Maginnis Howard as Settlement Class Counsel; (4) order that the proposed Notice to be sent to the Settlement Class; and (5) schedule a Final Settlement Approval Hearing to consider final approval of the Proposed Settlement.

## II.      SUMMARY OF THE LITIGATION.

Plaintiff filed his Complaint against Defendants in this Court, the United States District Court for the Middle District of North Carolina, on March 6, 2024. [*See generally* DE 1]. In his

Case 1:24-cv-00186-LCB-JEP     Document 27     Filed 10/23/24     Page 2 of 28

Complaint, Plaintiff alleges that, on or about March 5, 2024, cybercriminals were able to gain access to Defendants' computer records and access, *inter alia*, the W-2 tax information of Defendants' current and former employees, including Plaintiff and the Settlement Class, stored and maintained by Defendants, which necessarily included sensitive and valuable PII. [DE 1]. According to Defendants, information disclosed in the Data Breach includes but is not limited to names, addresses, and Social Security numbers. [*Id*.]. Plaintiff alleges that Defendants owed a non-delegable duty to their current and former employees, including Plaintiff and the Settlement Class, to implement and maintain reasonable and adequate cybersecurity measures to secure, protect, and safeguard PII against unauthorized access and disclosure; and that Defendants breached that duty by, *inter alia*, failing to implement and maintain such reasonable cybersecurity procedures and practices and thus to protect their PII from unauthorized access and disclosure. [*Id*.]. Plaintiff further alleges that, as a result, the Data Breach occurred and the PII of Plaintiff and the Settlement Class was accessed and disclosed, causing Plaintiff and the Settlement Class to be exposed to a heightened and imminent risk of financial fraud and identity theft, which they must closely monitor now and in the future.

The Parties have conducted an investigation of the facts, and after carefully considering the circumstances of this Action, including the claims asserted and the associated legal and factual defenses, the Parties have concluded that: (1) entering into this Agreement would be in their best interests to avoid the uncertainties, burden, and risks of litigation; and (2) this Agreement is fair, reasonable, adequate, and in the best interests of all putative Class Members. Defendants, despite their belief that they have strong defenses to the claims described herein, have agreed to enter this Agreement to resolve finally and completely the claims of Plaintiff and the Settlement Class.

### III.    THE PROPOSED SETTLEMENT.

The key terms of the Settlement are as follows:

### A.    <u>Certification of the Settlement Class</u>.

The Settlement Class is defined as:

> The persons identified on the Settlement Class List, including all individuals residing in the United States who were sent notification by Defendants that their Personal Information was potentially compromised in the Data Incident.

(<u>Ex. A</u>, ¶ 39).

The Settlement Class includes approximately 442 persons. Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid a Request for Exclusion prior to the Opt-Out Deadline.

### B.    <u>Settlement Benefits to the Settlement Class</u>.

The Proposed Settlement provides significant benefits to the Settlement Class, and the benefits to the Settlement Class outweigh the risk, time delay, and net expected value of continued litigation. *See, e.g., Six v. LoanCare, LLC*, 2022 WL 16747291 at *3 (S.D.W.Va. Nov. 7, 2022) ("While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead rationally and reasonably to forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account").

The Parties negotiated the Proposed Settlement's benefits and structure based on the type of information disclosed through the Data Breach and the amount and form of alleged damages

caused by the Data Breach for Plaintiff and the Settlement Class. Pursuant to the Settlement, Defendants will establish a $150,000.00 non-reversionary, qualified Settlement Fund. (Ex. A, ¶¶ 42; 46-51). Defendants have also agreed to provide documents and information to Class Counsel showing that they have taken data security measures to remedy the issues that led to the Data Security Incident and have implemented other business practices to help ensure information security. (*Id.,* ¶ 72). Defendant estimates that the costs of these measures are approximately $86,300, which shall be paid by Defendants separate and apart from the Settlement Fund. (*Id.*).

The Parties have agreed that the Settlement Fund will be used to cover the following: (1) distribution of proposed Notice, plus administrative expenses; (2) taxes and tax-related expenses; (3) Approved Claims for Out-of-Pocket Losses and/or Attested Time; (4) Approved Claims for Credit Monitoring Services; (5) Approved Claims for Alternative Cash Payments; (6) Service Award, as approved by the Court; and (7) attorneys' fees and costs, as approved by the Court. (*Id.*, ¶ 50). Following payment of the aforementioned expenses, any amount in the Residual Settlement Fund shall be paid to the Non-Profit Residual Recipient. (*Id.*, ¶¶ 50; 71). Defendants' records demonstrate those current and former employees whose information was exposed during the Data Breach; thus all members of the Settlement Class will receive compensation following proper submission of a Claim Form before the Claim Deadline. (*Id.*, ¶¶ 3-7; 5; 52-62).

The Parties have agreed to establish three categories of benefits for the Settlement Class: (1) Credit Monitoring Services; (2) Out-of-Pocket Losses and Attested Time; and (3) Alternative Cash Payment. These benefits shall operate as follows:

### 1. *Credit Monitoring Services.*

All members of the Settlement Class are automatically eligible to be enrolled in *Credit Monitoring Services*, which will "include daily three-bureau credit monitoring with Equifax,

Experian, and TransUnion; identity restoration services; and $1 million in identity theft insurance, among other features." (*Id.*, ¶¶ 11; 57). Within thirty days of the Effective Date (*see Id.*, ¶ 15), the Settlement Administrator shall send an activation code to each eligible Settlement Class member (via email and/or U.S. Mail) to activate their Credit Monitoring Services. (*Id.*, ¶ 57). Credit Monitoring Services will be provided to all class members who timely activate those services for a period of three years from the date of activation. (*Id.*).

### 2. *Out-of-Pocket Losses and Attested Time.*

All members of the Settlement Class may submit a claim for up to $5,000.00 for reimbursement of Out-of-Pocket Losses and/or Attested Time. (*Id.* ¶¶ 52; 54). *Out-of-Pocket Losses* consist of the costs incurred by a Settlement Class member traceable to the Data Incident. (*Id.*, ¶ 52). All claims for reimbursement of Out-of-Pocket Losses must provide sufficient information for the Settlement Administrator to evaluate the claim, including certain documentation (*i.e.*, receipts)[1]. (*Id.*). Additionally, Settlement Class members may submit a claim for reimbursement of their Attested Time "spent remedying issues related to the Data Incident." (*Id.*, ¶ 4; 54). Specifically, if they submit a brief description of their actions taken in response to the Data Incident and the time associated with each action, Settlement Class members may receive payment of $25.00 per hour for up to four hours of Attested Time. (*Id.* ¶ 54).

All claims for Out-of-Pocket Losses and/or Attested Time must be submitted to the Settlement Administrator, who must assess each claim and has sole discretion and authority[2] to determine whether claims are valid. (*Id.*, ¶¶ 53; 55-56). Should the Settlement Administrator

---

[1] However, if a Settlement Class member has already had these costs reimbursed by another source, they will not be reimbursed for Out-of-Pocket Losses by the Settlement Fund. (*Id.*).

[2] The Settlement Administrator may consult with Class Counsel and Defendants' Counsel in making such determinations. (Ex. A, ¶¶ 53; 55-56).

determine a claim for Out-of-Pocket Losses and/or Attested Time is deficient in whole or part, the Settlement Administrator shall notify the Settlement Class member of the deficiencies (within a reasonable time; via email and/or U.S. Mail) and will allow them twenty-one days to cure the deficiencies. (*Id.*, ¶ 56). If the Settlement Class member attempts to cure the deficiencies but fails to do so, the Settlement Administrator shall notify the class member within ten days. (*Id.*).

Members of the Settlement Class may combine their claims for reimbursement of Out-of-Pocket Losses and Attested Time, but in no circumstance will a Settlement Class member be eligible to receive more than the $5,000.00 from the Settlement Fund. (*Id.*, ¶¶ 52; 54). A claim for Out-of-Pocket Losses and/or Attested Time will <u>not</u> affect a Settlement Class member's eligibility for Credit Monitoring Services, as described *supra*. (*Id.*, ¶ 57).

### 3. *Alternative Cash Payment.*

Lastly, in lieu of the benefits described above, Settlement Class members may submit a claim for an Alternative Cash Payment totaling $75.00. (*Id.*, ¶¶ 2; 58). This one-time cash payment is available only *in lieu of* both Credit Monitoring Services and claims for Out-of-Pocket Losses and/or Attested Time. (*Id.* ¶¶ 52; 54; 57; 58-59). Accordingly, Settlement Class members are not required to submit any documentation or additional information in support of their claim for an Alternative Cash Payment, but the Claim Form must clearly indicate that the Settlement Class member is electing to claim the Alternative Cash Payment in lieu of any other benefits made available under this Settlement Agreement. (*Id.*, ¶ 59). However, the Settlement Administrator is still required to validate all claims submitted; thus, should any ambiguities in the Claim Form arise, the Settlement Administrator is required to contact the Settlement Class member (via email, telephone, and/or U.S. Mail) prior to making a determination as to the claim's validity and to

ascertain that the Settlement Class member understands that a claim for an Alternative Cash Payment excludes them from any other benefits available under the Settlement. (*Id*.).

**C.** **Appointment of Class Representative and Class Counsel.**

Plaintiff Mason Vaughan and his counsel are adequate under Rule 23 of the Federal Rules of Civil Procedure. There are no conflicts between their interests and the interests of the proposed Class. The Parties agree that Plaintiff should be appointed Class Representative, and Karl S. Gwaltney and Edward H. Maginnis of Maginnis Howard should be appointed Class Counsel. (*See* Ex. A, ¶¶ 8-9).

**D.** **Notice Plan for the Settlement Class.**

As set forth in the Settlement Agreement, it is the Parties' intent that members of the Settlement Class receive constitutionally adequate notice of the Settlement, thus the Notice Plan devised by the Parties will provide the best notice practicable under the circumstances of the Action, conform to Rule 23, and comply with the terms of the Agreement. (Ex. A, ¶¶ 75-76).

Defendants, in cooperation with Class Counsel, have generated a Class List containing all available contact information for the 442 members of the Settlement Class in Defendants' possession, to be furnished to the Settlement Administrator within ten days after the Preliminary Approval Order is entered by the Court. (*Id*., ¶¶ 40; 72). Then, within thirty days after Preliminary Approval, Notice of the Settlement will be sent by the Settlement Administrator (identified *infra*). (*Id*., ¶¶ 75-76). The documents included in the Notice and Claim Form are clear and concise and are designed to directly apprise Settlement Class members of all the information they need to make a claim (or opt-out or object). *See* Fed.R.Civ.P. 23(c)(2)(B).[3] Specifically, the Settlement

---

[3] *See also* Ex. A at Exhibit 1 (*Short-Form Notice*), Exhibit 2 (*Long-Form Notice*), Exhibit 3 (*Claim Form*).

Administrator will disseminate the Short-Form Notice to the members of the Settlement Class via first-class mail, as well as email where available. (Ex. A, ¶¶ 75-76). Additionally, a Settlement Website will be established and maintained by the Settlement Administrator (identified *infra*), which will make the Long-Form Notice and Claim Form available for all members of the Settlement Class. (*Id*.).

1. ***Administration of Notice and Claims*.**

Pursuant to the Settlement Agreement, Class Counsel will engage CPT Group, Inc. to oversee the administration of the Settlement. (Ex. A, ¶¶ 38; 80). CPT Group, Inc. ("Settlement Administrator") will complete the Notice Plan, as described *supra*, and will deliver Notice of the Settlement to all Settlement Class members. (*Id*., ¶¶ 46-51; 80). Moreover, the Settlement Administrator will receive and manage all claims, requests for exclusion, objections, and other communications submitted by Settlement Class members, and will keep Class Counsel and Defendants' Counsel updated regarding the submissions received. (*Id*., ¶¶ 60-68; 77-80). It is expected that the services provided by CPT Group, Inc. will not exceed $12,500.00 (which does not include the costs of credit monitoring).

2. ***Exclusions and Objections*.**

Additionally, the Notice will explain the procedure by which members of the Settlement Class may exclude themselves from (or "opt-out" of) the Settlement or object to the Settlement.

As the Notice will explain, a Settlement Class member may opt-out of the Settlement by submitting a timely, proper Request for Exclusion to the Settlement Administrator, postmarked no later than the Opt-Out Date. The proposed Opt-Out Date is 60 days after the Notice Date. (Ex. A, ¶¶ 6-7; 26; 77; 79). A proper Request for Exclusion must include: (1) the name of the proceeding; (2) your full name and current address; (3) signature of the excluding Class Member; and (4) the

Case 1:24-cv-00186-LCB-JEP   Document 27   Filed 10/23/24   Page 9 of 28

words "Request for Exclusion" or a comparable statement that the Settlement Class Member does not wish to participate in the Settlement at the top of the communication. (*Id.*, ¶ 77). Any Settlement Class member who does <u>not</u> file a timely, proper Request for Exclusion will lose the opportunity to exclude themselves from the Settlement and will be bound by the Settlement. (*Id.*).

The Notice will also outline the procedure for a Settlement Class member's objection to the Settlement or Fee Application. A Settlement Class member may properly object by filing a timely, proper written objection with the Court no later than the Objection Deadline. (*Id.*, ¶¶ 6-7; 25; 77-78). Like the proposed Opt-Out Deadline, the proposed Objection Deadline is also 60 days after the Notice Deadline. (*Id.*, ¶¶ 25; 77). A proper written objection submitted by a Settlement Class member must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vii) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to speak at the Final Approval Hearing; (viii) a list of all other matters in which the objecting Settlement Class Member and/or his/her attorney has lodged an objection to a class action settlement; and (ix) the signature of the Settlement Class Member or the Settlement Class Member's attorney. (*Id.*, ¶¶ 12, 77).

**E.** **<u>Attorneys' Fees and Service Award</u>.**

Subject to the approval of the Court, attorneys' fees, costs, and expenses for Class Counsel will be paid from the Settlement Fund. (*See* <u>Ex. A</u>, ¶ 95). Class Counsel will file a motion for an

award of attorneys' fees and litigation costs and expenses not to exceed one-third (33.333%) of the Settlement Fund, or Fifty Thousand Dollars and Zero Cents ($50,000.00) to be paid from the Settlement Fund, and subject to Court approval. (*Id.*).

In addition, Class Counsel will apply for, and Defendants will not oppose, a service award not to exceed $2,500.00 for the Class Representative. (*Id.*, ¶ 93).

The Parties did not discuss the issue of attorneys' fees, costs, and expenses, nor any service award until after reaching agreement on the Settlement Class Member benefits. Plaintiff will file a separate motion for approval of attorneys' fees, costs, and expenses in accordance with the proposed schedule discussed *infra*.

## F.   <u>Fairness Hearing</u>.

If the proposed Settlement Class is certified and the settlement preliminarily approved, Plaintiff, with Defendants' consent, will move the Court to hold a Final Fairness Hearing.

## IV.   LEGAL STANDARDS FOR PRELIMINARY APPROVAL, CONDITIONAL CLASS CERTIFICATION, AND APPROVAL OF THE NOTICE FORM.

## A.   <u>Preliminary Approval of Settlement</u>.

Pursuant to Federal Rule of Civil Procedure Rule 23, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed.R.Civ.P. 23(e). Courts considering proposed settlement under Rule 23 typically engage in a three-step process: (1) the Court determines whether the proposed settlement merits preliminary approval; (2) the Court directs that notice of the proposed settlement be distributed to the settlement class, thereby providing class members with the opportunity to object to the settlement; and (3) the Court evaluates whether final approval of the settlement is warranted and, if so, grants final approval.

*See Id.*; *see also* Manual for Complex Litigation, Fourth Ed. ("MCL 4th") § 21.632; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).

It is well-established that the law and the public interest favors settling litigation, particularly in class actions. *See In re Novant Health, Inc.*, 2024 WL 3028443 at *5 (M.D.N.C. Jun. 17, 2024) (citing, *inter alia*, *U.S. v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992)); *see also S.C. Nat'l Bank v. Stone*, 749 F.Supp. 1419, 1423 (D.S.C. 1990) ("In the class action context in particular, there is an overriding public interest in favor of settlement" (cleaned up)). Settlement has become the preferred method of resolving legal disputes not only because they conserve judicial resources, but also because they reflect the collective judgment of the litigants, who are in the best position to evaluate the strengths and weaknesses of their legal positions. *See, e.g., Pierce v. Statebridge Co., LLC*, 2021 WL 1711784 at *3 (M.D.N.C. Apr. 29, 2021) ("The complexity, expense, and duration of class action litigation are factors that mitigate in favor of preliminary approval of a settlement" (cleaned up)); *see also Stone* at 1423 (Settlement of "class actions minimizes the litigation expenses of both parties [and] reduces the strains such litigation imposes upon already scarce judicial resources" (cleaned up)). Additionally, "the opinion of class action counsel, with substantial experience in litigation of similar size and scope, is an important consideration;" thus, where "the parties' attorneys are experienced [in class action litigation] and knowledgeable about the facts and claims [of the case], their representations to the court that the settlement provides class relief which is fair, reasonable, and adequate should be given significant weight." *Id.* (quoting *Muhammad v. Nat'l City Mortg., Inc.*, 2008 WL 5377783 at *4 (S.D.W.Va. Dec. 19, 2008)).

At the preliminary approval stage, the court determines whether the proposed Settlement is "within the range of possible approval" or, whether there is "probable cause" to give notice of

the proposed Settlement to class members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *accord In re NeuStar, Inc. Sec. Litig.*, Case No. 14-885, 2015 U.S. Dist. LEXIS 129463, at *23-24 (E.D. Va. Sep. 23, 2015). The primary issue before the Court is whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate. *Matthews v. Cloud 10 Corp.*, Case No. 14-00646, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); *accord* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172-73 (2004) ("Manual Fourth") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed Settlement, and date of the final fairness hearing.").

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machs., Inc.*, 2016 U.S. Dist. LEXIS 131009, at *15 (E.D.N.C. Sep. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement."). The court has the discretion to determine whether to approve the proposed Settlement. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir.1991)).

**B.** <u>**Conditional Class Certification**</u>.

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.*, 2014 U.S. Dist.

177206, *4 (E.D.N.C. Dec. 24, 2014). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management but must analyze whether the other requirements for certification must have been satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar*, 2015 U.S. Dist. Lexis 129463, at *5-6 (E.D.V.A. Sept. 23, 2015) (citing and quoting *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004)). The Settlement Class must also satisfy one of the categories of Rule 23(b). *Id*. However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *See Amchem*, 521 U.S. at 620.

## C.     **<u>Notice Form Approval</u>.**

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. See Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*.; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Furthermore, the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires, that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (v) and the binding effect of a class judgment on the class members.

Fed. R. Civ. P. 23(c)(2)(B). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co*., 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its

Case 1:24-cv-00186-LCB-JEP     Document 27     Filed 10/23/24     Page 14 of 28

discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

## V.     ARGUMENT IN SUPPORT OF PLAINTIFF'S MOTION.

The proposed Settlement warrants preliminary approval. In addition to being fair, adequate, and within the range of reasonableness, the proposed Settlement satisfies the standards of Rule 23. Additionally, the proposed Notice meets the requirements of due process and is accurate, informative, and easy to understand. Accordingly, Plaintiffs seek this Court's approval. Plaintiffs also request that the Court schedule a final approval hearing, given that Plaintiffs have met the appropriate standards for preliminary approval of settlement, class certification, and notice of settlement.

### 1.     The Proposed Settlement Meets the Standard for Preliminary Approval.

#### a.     *The Settlement Agreement is Fair, Reasonable, and Adequate*.

Preliminary approval is proper where "preliminary evaluation of the proposed [class] settlement does not disclose grounds to doubt its fairness" or reveal any "other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys," and thus "appears to fall within the range of possible approval." *Robinson v. Carolina First Bank NA*, 2019 WL 719031 at *7 (D.S.C. Feb. 14, 2019) (cleaned up).

Here, the proposed Settlement resolves the parties' legal disputes in a reasonable manner. Importantly, it provides guaranteed benefits to all Settlement Class members in the form of Credit Monitoring Services, plus compensation for Out-of-Pocket Costs and/or Attested Time; *or* a one-time Alternative Cash Payment of $75.00. (*See generally* Ex. A, ¶¶ 52-59). Settlement Class members will be able to obtain their benefits relatively quickly, rather than waiting several more

months or years to see whether this litigation would provide any relief. Moreover, each Settlement Class member is set to receive benefits consisting of, at the very least, three years of Credit Monitoring Services, a standardized value based upon the total amount of damages, thus the proposed Settlement provides reasonable benefits to <u>all</u> members of the Settlement Class without preferential treatment for any individuals in the Settlement Class. (*See Id*., ¶ 57). Lastly, as more fully explained below, the attorneys' fees contemplated by the Settlement Agreement are not excessive or unreasonable. (*See Id*., ¶ 95). Therefore, the Settlement is within the range of reasonableness with no obvious deficiency. *See, e.g., Brunson v. Louisiana-Pacific Corp.*, 818 F.Supp.2d 922, 927 (D.S.C. 2011) (granting preliminary approval where "the Settlement is well within the range of final approval" because "[t]here are no grounds to doubt [its] fairness [;] nor are there other obvious deficiencies[,] such as unduly preferential treatment of Plaintiffs or of segments of the class, or excessive compensation for attorneys.").

> ***a.*** *The Settlement is the Product of Non-Collusive Negotiations.*

The fairness analysis is intended primarily to ensure that a "settlement [is] reached as a result of good faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *In re Jiffy Lube*, 927 F.2d at 159). The proposed Settlement Agreement here is "the result of good faith bargaining at arm's length, without collusion." *In re Jiffy Lube* at 159. "Absent evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion." *Pierce* at \*2 (quoting *Muhammad* at \*3). Prior to reaching an agreement, Class Counsel and Defense Counsel were each able to independently assess and weigh the advantages, costs, and risks of proceeding to trial, as well as the relative strengths and weaknesses of their respective claims and defenses. *See Hinkle v. Matthews*, 2018 WL 6004680 at \*2 (S.D.W.Va. Nov. 15, 2018)

(holding that the "settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations" because, counsel for both parties were "experienced in prosecuting complex class action claims," and "[b]y the time [negotiations] occurred," they had developed "a clear view of the strengths and weaknesses of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement" (cleaned up)); *see also Hale v. CNX Gas Co. LLC*, 2018 WL 9963835 at *2 (W.D.Va. Mar. 20, 2018) ("The parties entered into the Settlement Agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues. [Thus, the] Settlement Agreement is the product of non-collusive, arm's-length bargaining."). Accordingly, the Settlement is the product of extensive, non-collusive, good-faith bargaining.

**2. <u>The Settlement Class Should Be Conditionally Certified for Settlement Purposes.</u>**

When presented with a settlement-only class, the United States Supreme Court has held that a district court must determine whether a class meets the requirements of Federal Rules 23(a) and 23(b)(2) or 23(b)(3) – save for evaluation of any class manageability issues at trial. *Amchem Products, Inc.*, 521 U.S. at 591, 617, 620. Because the Settlement Class meets Rule 23(a) and Rule 23(b)(3) standards, Plaintiffs moves for conditional certification.

*a. <u>The Settlement Class Satisfies the Requirements of Rule 23(a).</u>*

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

*i. Numerosity.*

The numerosity test is for the "impracticability[;] <u>not</u> impossibility of joinder," thus a plaintiff needs to show "only difficulty or inconvenience of joining all members of the class." *Pitts v. Am. Sec. Ins. Co.*, 550 S.E.2d 179, 187 (N.C.Ct.App. 2001) (cleaned up) (emphasis added). The "number" at which numerosity is established "is not dependent upon any arbitrary limit but rather upon the circumstances of each case." *Id.* (cleaned up). Here, with 442 members, the Class is too numerous for joinder to be practical.

*ii. Commonality.*

The Settlement Class meets Rule 23's "commonality" requirement because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "liberally construed… a class action will not be defeated solely because there are some factual variations among the members' grievances." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995). Commonality "does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist." *Id.* With respect to commonality, "[w]hat matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). Common questions with respect to the Settlement Class includes whether Defendants' data security systems prior to the Data Incident met the requirements of relevant laws and/or industry standards; whether Defendants owed (and ultimately breached) a duty to Plaintiff and Class Members to safeguard their personal information; and, whether Defendants provided adequate notice of the Data Incident to affected persons, including Plaintiff

and the Settlement Class. Each and every member of the proposed Settlement Class were subject to Defendants' policies and procedures.

### iii. *Typicality.*

The Class Representative fulfills Rule 23(a)'s "typicality" requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement does not require the Class Representatives to have identical facts and legal claims as the class; rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Class Representatives'] proof of [their] own individual claim[s]." *Beaulieu v. EQ Indus. Servs.*, 2009 U.S. Dist. LEXIS 133023, at *39-40 (E.D.N.C. Apr. 20, 2009). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "Generally, the court must determine whether the asserted claims 'arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" Id. at *40 (citing *Rodger*, 160 F.R.D. at 538).

Here, typicality is satisfied. The claims of the Plaintiff are typical of the claims of the Settlement Class and is based on the same facts and legal theories. The claims or defenses of Plaintiff are typical of the claims or defenses of the proposed Class because Plaintiff's claims are based upon the same legal theories and violations of law. Plaintiff and Class Members all had their PII misappropriated in the Data Breach. Plaintiff's grievances, like the proposed Class Members' grievances, all arise out of the same business practices and course of conduct by Defendants. The legal and factual arguments that the named Plaintiff has in representing the Settlement Class are the same arguments that other Settlement Class Members would advance in support of their claims.

In this case, "[b]ecause the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006).

### iv. *Adequate Representation*

The Plaintiff also meets Rule 23(a)(4)'s adequacy requirement because Class Representatives have "common interests with unnamed members of the class" and "vigorously prosecute[d] the interests of the class through qualified counsel." *Beaulieu*, 2009 U.S. Dist. LEXIS 133023, at *43 (citing *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007)). The adequacy analysis evaluates potential conflicts of interest between named parties and the class. *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). "[B]asic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Id.* First, the interests of the Class Representative fully align with the members of the Settlement Class. As discussed above, Plaintiff is prosecuting the same claims as the other Class Members, and these claims arise from a common set of operative facts. The Class Representative has demonstrated his commitment to monitor and supervise the prosecution of the case on behalf of the Settlement Class.

Second, the Class Representative has protected the interests of the Settlement Class by retaining qualified, experienced counsel to represent the Settlement Class. Plaintiffs' counsel is experienced in prosecuting complex class actions and have effectively represented numerous plaintiffs in other consumer protection actions, class actions, and complex business cases, typically as lead or co-lead counsel. Thus, as required by Rule 23, both the Class Representative and Plaintiff's counsel provide adequate representation of the Settlement Class.

v. *Ascertainability*

Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). A proposed class representative "need not be able to identify every class member at the time of certification." *Id*. "[E]xtensive and individualized fact-finding" or "mini trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

Here, the proposed Class meets the implied "ascertainability" requirement, because the Members are "readily identifiable." Indeed, Defendants have identified each member of the Settlement Class and has a list compiled and ready to produce.

b. *The Settlement Class Satisfies the Requirements of Rule 23(b)(3)*.

Because the Settlement Class seek to recover damages, the Court must also determine whether the Class complies with the requirements of Fed. R. Civ. P. 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15 (internal quotations and citations omitted). Certification of the Settlement Class serves these purposes.

i. *Common Questions of Law and Fact Predominate*

The Settlement Class satisfies the predominance inquiry because the "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Beaulieu*, 2009 U.S. Dist. LEXIS 133023, at \*60 (citing *Amchem Products*, 521 U.S. at 623). "The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 89-90 (E.D.N.C. 2009) (internal citation omitted); accord *McLaurin v. Prestage Foods, Inc*., 271 F.R.D. 465, 478 (E.D.N.C. 2010) ("common evidence … would establish a prima facie case for the class. Individual issues may exist, but the court does not believe they predominate."). Factual differences between members of the settlement class members do not defeat predominance where "the principal questions surrounding plaintiffs'… claims are the same." *Id*. (citing *Martinez-Hernandez v. Butterball, LLC*, 2008 U.S. Dist. LEXIS 111931, at \*13 (E.D.N.C. November 14, 2008)). Furthermore, the likelihood that class members may have suffered individual damages does not impact the predominance analysis. *See Gunnells v. Healthplan Servs.,* 348 F.3d 417, 427-28 (4th Cir. 2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification.").

The claims of Plaintiffs and all proposed Settlement Class Members are identical: they all arise from Defendants' conduct and predominate over any issues affecting only individual Class Members. The common issues hinge on Defendants' common course of conduct, giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action

ii. *Class Resolution of this Action is Superior to Other Methods of Adjudication*

In order to determine whether the class action device is the superior method of adjudicating these claims, Rule 23(b)(3) enumerates four factors for consideration: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. Rule 23(b)(3). "The Supreme Court explained in Amchem that when dealing with a settlement-only class pursuant to Rule 23(e), a district court need not inquire whether the case, if tried, would present intractable management problems." *Gunnells*, 348 F.3d at 440 (internal quotes omitted). It is well-settled that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id*. (quoting *Amchem*, 521 U.S. at 617).

This case presents a disincentive to pursue individual lawsuits because the prospect of small individual recoveries is dwarfed by the cost of litigation, which includes the collection and presentation of common proof required to establish Defendants' liability. If each Class Member were required to sue Defendants individually, then each would have to present evidence that Defendants failed to adequately safeguard their PII. This would require each Class Member to engage in discovery and likely motion practice. While litigating an individual action would consume less time, hourly billing would still result in attorney fees in the thousands of dollars, dwarfing an individual's recovery, and making it difficult to obtain representation on a contingency basis. Because this action arises from Defendants purported common policies across the Settlement Class, it presents a quintessential case suitable for aggregate treatment. In addition to all these

preceding factors, and given the relatively low actual damages figure per Settlement Class member, it is highly unlikely that these claims would be pursued on an individual basis, leaving the Settlement Class with virtually no other options for relief.

3. **Plaintiff's Notice Form and Plan Satisfies Rule 23**.

Under Rule 23, all "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled…only with the court's approval" and subject to a number of specific procedures, including notice to the class. Fed.R.Civ.P. 23(e)-(e)(1). "For classes certified under Rule 23(b)(3), class members must receive the 'best notice' that is 'practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *In re Novant* at *8 (quoting Fed.R.Civ.P. 23(c)(2)(B)); *see also* Fed.R.Civ.P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal"). Therefore, in accordance with Rule 23 and the relevant due process considerations, adequate notice must be provided to all members of the Settlement Class to enable them to make an informed choice as to whether they will opt-out of the Class. *See Id*. ("In the context of a class action, the due process requirements of the Fifth Amendment require reasonable notice combined with an opportunity to be heard and withdraw from the class" (quoting *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 472 (W.D.Va. 2011)); *see also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 326 (3d Cir. 1998) ("Rule 23(e) notice is designed to" (1) " summarize the litigation and the settlement[;]" and (2) "apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation" (quoting 2 *Newberg on Class Actions* § 8.32 at 8-109 (3d ed. 1992))).

Here, under the proposed Notice Plan, Class Members will receive the best notice practicable because they will receive direct notice of the Settlement directly. *See, e.g., Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) ("[T]he express language and intent of [Federal Rule 23(c)] leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort"). The Settlement Administrator will also set up a Settlement Website which will host relevant documents, as well as a toll-free telephone number for Settlement Class members who have any questions about the settlement.

Moreover, the Settlement Notice states all the information required by Rule 23(c)(2)(B), thus it will adequately apprise all Settlement Class members of the Settlement, the litigation, and the procedures for objection and exclusion. Specifically, the Notice will set forth:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

The proposed Notice also includes information regarding attorneys' fees and costs that may be sought by Settlement Class Counsel, as well as the contact information for Class Counsel, Defendants' Counsel, and the Court. Accordingly, the proposed Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court, and the Plaintiff respectfully requests the Court direct Notice to all members of the Settlement Class.

## A.    <u>Final Approval Hearing</u>.

Accordingly, this Court should schedule a Final Approval Hearing because the Settlement is within the range of reasonableness and the notice plan provides the best practicable notice to Settlement Class members. Plaintiff proposes the following schedule leading to the Hearing:

(1) <u>Notice Deadline</u>: Notices in similar form of the Exhibits to the Settlement Agreement shall be sent within <u>30 Days</u> after the entering of the Preliminary Approval Order.

(2) <u>Settlement Website</u>: The Settlement Website shall be established no later than the date the first Class Notice is sent.

(3) <u>Opt-Out Deadline</u>: 60 Days after Notice Date.

(4) <u>Objection & Notices to Appear Deadline</u>: 60 Days after Notice Date.

(5) <u>Claims Deadline</u>: 60 Days after Notice is sent to the Settlement Class.

(6) <u>Final Approval Hearing</u>: A Final Approval Hearing shall be held at ___:_ _.m. on _____, 2024, by videoconference in the United States District Court for the Middle District of North Carolina, at the Courthouse located at _____, _____, _____, _____ [by videoconference], which is at least 110 Days after Preliminary Approval.

(7) <u>Final Approval Briefing</u>: The Parties shall file and serve papers in support of final approval of the settlement, including any responses to proper and timely objections filed thereto, by _____, which is approximately 30 days prior to the Final Approval Hearing.

(8) <u>Motions for Service Award Payment(s) and Attorneys' Fee Award and Costs</u>: Class Counsel shall file with this Court their petition for an award of attorneys' fees and reimbursement of expenses and request for service award to the Plaintiff, by _____.

(9) <u>Register for Credit Monitoring</u>: after an Order is entered granting Final Approval.

# VI.    CONCLUSION.

As a result of the foregoing, Plaintiff respectfully requests this Court to: (1) preliminarily approve the proposed Settlement Agreement pursuant to Fed. R. Civ. P. 23(c) and (e); (2) preliminarily certify the Settlement Class; (3) approve the form and manner the proposed Class Notice; (4) schedule a final approval hearing to consider final approval of the proposed Settlement, and approval of attorneys' fees, costs, and service award; and (5) grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this the 23rd day of October, 2024.

**MAGINNIS HOWARD**

*/s/ Karl S. Gwaltney*
KARL S. GWALTNEY
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel:    919-526-0450
Fax:    919-882-8763
kgwaltney@carolinalaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document has been filed with the Court's CM/ECF filing system which effectuates service upon all parties having appeared in this matter.


This the 23rd day of October, 2024.

*/s/ Karl S. Gwaltney*
KARL S. GWALTNEY

*Counsel for Plaintiff*